RANDY S. GROSSMAN
United States Attorney
NICOLE E. BREDARIOL
Massachusetts Bar No. 696484
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8419
Email: Nicole.Bredariol@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-CR-344-WQH |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| CRISTOBAL SANCLEMENTE FARRUFIA (2), | Date: January 31, 2022<br>Time: 9:00 a.m. |
| Defendant. | |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Nicole E. Bredariol, Special Assistant United States Attorney, hereby files its Sentencing Memorandum. This memorandum is based upon the files and records of the case.

## I.    INTRODUCTION

Cristobal Sanclemente Farrufia (Defendant), is before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503 and Operation of a Semi-Submersible Vessel without Nationality in violation of 18 U.S.C. § 2285. A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill necessary to transport cocaine on the high seas, on a low profile or semi-submersible vessel, takes skill and experience. Engaging in a journey that takes days and requires navigating hundreds of miles on the ocean takes extensive preparation. Defendant relied on his skill and acumen during this

extended journey to try and achieve a significant reward – a payday. After taking into consideration the seriousness of the offense, including the level of skill and preparation required to transport approximately 1,500 kilograms of cocaine on a semi-submersible vessel and the remaining 3553(a) factors, the United States recommends 100 months' custody, concurrent, followed by 5 years' supervised release, no fine, and a $200 special assessment.

## II. STATEMENT OF FACTS

### A. The Crime

On January 27, 2021, a Maritime Patrol Aircraft (MPA) detected a semi-submersible vessel, or a "low profile" vessel approximately 55 nautical miles south of Panama, in international waters.[1] MPA captured video and images of the semi-submersible vessel underway.



---

[1] 18 U.S.C. § 2285(h) states "semi-submersible vessel" has the meaning given in 46 U.S.C. § 70502. 46 U.S.C. § 70502 explains "[t]he term 'semi-submersible vessel' means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft." As demonstrated by the pictures above and below, this vessel meets the definition of a semi-submersible.





United States Coast Guard Cutter ("USCGC") MUNRO was nearby and diverted to intercept the semi-submersible vessel. MUNRO launched two small boats with embarked boarding teams and interdicted the semi-submersible vessel. The semi-submersible vessel was grey in color, with three outboard engines, and had the three defendants on board (including Defendant Sanclemente Farrufia).

The semi-submersible vessel had no physical flag flown, no registration number or other markings on the hull, and no registration documents. When asked Defendant 1, Appleton-Lewis, claimed to be the master of the semi-submersible vessel and made a claim of Colombian nationality for the semi-submersible vessel. Colombia could neither confirm nor deny the claim of nationality for the vessel. Based on all this, the Coast Guard treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding during which they recovered approximately 1,500 kilograms of cocaine on board the semi-submersible vessel.

Post-Arrest the defendants on the semi-submersible vessel provided various statements. Ultimately, agents discovered Defendant left Colombia in the semi-submersible vessel and was supposed to deliver the cocaine to Costa Rica. The bales of cocaine and additional supplies were inside the semi-submersible vessel. Defendant refueled the semi-submersible vessel over the multi-day journey.





**B. Defendant's Statements**

During the presentence interview Defendant adopted the factual basis portion of his plea agreement.

### III. THE GUIDELINES

#### A. Calculation

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements nor any reductions for role. There is a two-level upward adjustment for operation of a semi-submersible under USSG § 2D1.1 (b)(3), a two-level downward departure for safety valve, and a three-level downward departure for acceptance of responsibility. Defendant is in Criminal History Category I per the PSR. The resulting guideline range is 168 to 210 months in custody. Pursuant to the plea agreement the United States is recommending 100 months in custody - a substantial variance of 68 months or approximately a forty percent reduction to the low end of the guideline range.

#### B. Government Recommendation

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel and Operation of a Semi-Submersible vessel. Maritime drug smuggling is a complicated endeavor. The evidence demonstrates Defendant coordinated an at sea voyage spanning hundreds of nautical miles to transport a vast amount of cocaine valued at millions of dollars. Transporting cocaine on the high seas takes considerable skill and experience. That skill promised a significant reward. For Defendant that reward was monetary.

Second, this was a complicated smuggling venture for which Defendant's preparation, expertise, experience, and efforts were critical. He acted as more than a mere drug courier which this district often encounters for sentencing in land-based drug smuggling ventures. Maritime smuggling requires specialized skills, and men like Defendant are recruited because of their familiarity with the maritime environment. A semi-submersible vessel is different from the go-fast vessel, or open hull panga style vessels, typically seen in this District for use in maritime drug smuggling. It requires additional skill to navigate this type of vessel. Notably, under 18 United States Code Section 2285 Congress made the mere operation of a semi-submersible vessel illegal

because it declared "that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States." Drug Trafficking Vessel Interdiction Act of 2008, S. 3598, 110th Congress, § 101 (2008). Therefore, the mere operation of this vessel, even if it had not been carrying over 1,500 kilograms of cocaine, is illegal.

Additionally, Defendant is Colombian, but was discovered hundreds of miles from his home country. Arriving to the interdiction location required him to prepare to be away from home for an extended period of time, and to help navigate the vessel over a multi-day journey spanning hundreds of miles. Over this extended period of time, he was required to deal with all the difficulties that navigating on the high seas brings, including weather, sea state, and difficult communications. This requires expertise and experience and cannot be performed by just anyone. Unlike a simple drug courier who may only be responsible for drugs for a few hours and a few miles during a border crossing, this journey required Defendant to be responsible for the cocaine for hundreds of miles and days.

Third, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate in this case. The United States is not arguing for a navigator enhancement. However, a minor role reduction is not appropriate in this case. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006). The suggestion Defendant was only responsible for refueling the vessel is supported by no evidence other than his self-serving statements. *See United States v. Rigby*, 896 F.2d 392, 395 (9th Cir. 1990) (upholding district court's finding that the defendant had not established that he was a minor participant since there was no evidence, other than defendant's self-serving statement, to support such a finding). But, even if you accept Defendant's self-serving statements that he worked as the refueler, he has still not met his burden to demonstrate he is substantially less culpable than the average participant.

Assuring the vessel was appropriately fueled and able to complete this arduous journey was critical to its success. The defendants operated as a team, utilizing tremendous skill, training, and acumen as discussed. The three were literally stuck in the same boat, and all were critical and equally culpable for its voyage. The Defendant is not less culpable than the average participant—let alone *substantially* less culpable.

Defendant also understood the scope of this crime, he was to transport a vast amount of cocaine from Colombia north to Costa Rica. He was involved in planning for and preparing for the criminal activity. As one of three men on this vessel in the middle of the high seas he was in control of the vessel. Finally, Defendant stood to benefit from the criminal activity, expecting a significant financial reward. He participated extensively in the criminal activity, stood to benefit from it, and exercised discretion in performing the acts to further the criminal enterprise. This weights against a role reduction.

Fourth, Defendant was responsible for trafficking an astounding amount of cocaine. While Defendant may claim he did not intend to come to the United States, his role in transporting the cocaine in the semi-submersible vessel was critical to the success of the trafficking venture and it was foreseeable the cocaine was bound for the United States. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States it would have been worth tens of millions of dollars. There is no doubt that had this highly dangerous drug successfully made it to the United States it could have led to extensive harm.

Fifth, given the need to generally deter others it is essential the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Only a significant sentence will discourage future potential traffickers from engaging in similar crimes. The incentive to make relatively large sums of money for trafficking drugs must be combated with the deterrence of significant sentences for engaging in this criminal activity. There is a need to impose a sentence that adequately deters others from engaging in this criminal activity for the hopes of financial reward.

Sixth, the substantial variance already recommended by the United States appropriately accounts for any variances based on the history and characteristics of the defendant or COVID-19. Defendant was entrusted to smuggle approximately 1,500 kg of cocaine hundreds of miles while operating far from land with some autonomy, on a semi-submersible vessel. Defendant's sentence should reflect his extensive culpability.

All of these factors combined justify a 100-month sentence.

### C.  Conclusion

Based on the 3553(a) factors a custodial sentence of 100 months, concurrent, followed by 5 years' supervised release, no fine, and a $200 special assessment is appropriate.

DATED: January 24, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Nicole E. Bredariol*
Nicole E. Bredariol
Special Assistant U.S. Attorney